HOUGH, Plaintiff in error, v. STATE, Defendant in error.

*No. State 220 (1974). Argued October 2, 1975.—*
*Decided December 2, 1975.*
(Also reported in 235 N. W. 2d 534.)

808

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Robert J. Paul,* assistant state public defender, and oral argument by *Mr. Paul.*

For the defendant in error the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J. The defendant, James Robert Hough, was convicted of rape, sexual perversion, and robbery, contrary to secs. 944.01, 944.17 (1), and 943.32 (1) (b), Stats., respectively, and sentenced to twenty-nine years for rape, five years consecutively for sexual perversion, and ten years concurrently for robbery.

The principal issue on review is whether testimony concerning alleged prior acts of the defendant should have been excluded from evidence on the theory that (1) the alleged prior acts were dissimilar in character and not proximate in time; (2) the prejudicial effect of such evidence outweighed its probative value; and (3) the evidence could not be introduced on cross-examination and in rebuttal. The defendant also argues that the trial court should have instructed the jury, on its own motion, on the limited purpose of the prior act evidence. Counsel for the defendant further argues that the evidence was insufficient to sustain the conviction, and that a new trial should be granted in the interest of justice.

The complainant, a twenty-six-year-old woman, testified that on the morning of September 12, 1972, she had been at the Racine Motor Inn delivering brochures in connection with her public relations job for a moving and storage firm. She was sitting alone in the front

seat of her vehicle, making notes, when a man that she identified as the defendant opened the driver's door. She described him as five-feet-six-inches tall, 120 pounds, and wearing brown boots spattered with white or silver paint. As the man got into the vehicle, he called her a name, told her to move over, and said he had to get somewhere fast. As she was pushed across the seat, she reached for the microphone of a radio that was resting on the seat next to her, over which she intended to broadcast a call for help. Before she could say more than her name, the defendant seized the microphone and grabbed her chin. As she was pushed across the seat, the radio was trapped between her right hip and the passenger door, which was locked. The defendant put the microphone under his leg, stretching the cord across her lap in a manner such that, she testified, she could not get to the door. While still holding her chin, he told her he had a knife, and that she was not to "try anything." She testified that she never did see the knife.

Keeping his left hand in his hip pocket, the defendant drove through town making approximately a dozen traffic stops before reaching the dead end of a road. One time when the complainant looked out of the window, he told her to keep her eyes forward, and she noticed he had blood on his cheek. She testified that after the defendant stopped the car, he forced her to partially disrobe, perform an act of fellatio upon him, and submit to sexual intercourse.

Before intercourse, the defendant inserted a finger into the complainant's vagina and asked her if she was a virgin. When she replied that she was, he told her that she was not. He then commenced to have intercourse with her, stated that he could not have intercourse with her because "you're not a virgin," and withdrew before emission. At one point he tried to kiss complainant, and she noticed there was blood in his mouth.

They then drove back to town making a number of traffic stops. The complainant testified she was too frightened to try to escape, and that while they were driving the defendant asked for and was given her wallet. He removed her money, inspected her driver's license, and threatened harm if she reported the incident. With some directions from the complainant he drove the car to a spot near a tavern, where he left the vehicle, wiping the surfaces he had touched. The complainant testified that out of fear of attack she did not pursue him or attempt to attract attention as he walked away. She drove away while radioing her office and was shortly thereafter taken to the police station where she identified the defendant from pictures.

Other testimony introduced at the trial showed that the defendant had left work that morning because of a toothache, had gone to a dentist and had had two teeth extracted, and had blood coming from his mouth as a result of the extractions. Testimony also showed that he had been working with light blue or silver paint that morning. The defendant denied having committed the alleged rape, and claimed that during the time of the alleged rape he was walking home from the dentist.

We find from a review of the record that there was more than sufficient evidence upon which the jury could have found the defendant guilty of rape beyond a reasonable doubt. The threat of death or serious personal injury by threatened use of a weapon is sufficient to meet the test of sec. 944.01, Stats.,[1] and this court has said that

---

[1] "944.01 **Rape.** (1) Any male who has sexual intercourse with a female he knows is not his wife, by force and against her will, may be imprisoned not more than 30 years.

"(2) In this section the phrase 'by force and against her will' means either that her utmost resistance is overcome or prevented by physical violence or that her will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm."

the law does not require a woman to become a martyr to test by resistance the sincerity of a threat to use force. It is obvious that the defendant did not tell the complainant that he had a knife merely for the purpose of giving information. *State v. Herfel* (1971), 49 Wis. 2d 513, 518, 519, 182 N. W. 2d 232.

When the defendant testified in his own behalf, he was asked on cross-examination whether or not he had ever said to another girl that he was going to rape her because she was a virgin. The defendant immediately said "no," and objection was made by defense counsel. Counsel then went into chambers at the direction of the court, and the prosecutor stated that he was laying a foundation for introduction in rebuttal of evidence of prior acts which would show the defendant's character, identity, and *modus operandi*.

After considerable discussion, the trial was recessed to allow the court to consider the state's offer of proof until the following morning. The defendant was present in the chambers during the time of the discussion. The next morning the prosecutor explained that he planned to offer the testimony of a certain fifteen-year-old girl that the defendant had once said he would rape because she was a virgin. The court decided to admit the evidence because of its relevance to the defendant's "plan." Defense counsel objected that the evidence should have been part of the state's main case, that it was an unfair surprise, and that it was prejudicial to the defendant. The case then proceeded before the jury, and when the defendant returned to the stand, he admitted that he was acquainted with the fifteen-year-old girl in question, but denied ever having stated he was going to rape her because she was a virgin. The young lady then testified in rebuttal that he had made such a statement, and that it occurred August 30, 1971, in front of her house in the presence of her mother, stepfather, and sister. She

further testified that the police had been called and the defendant had been warned to stay away from her residence, but that no charges were brought.

The defendant testified in surrebuttal that it was his wife who had told the young lady that the defendant would rape her because she was a virgin, and that he himself had not made such a statement.

As the case went to the jury, no instruction was requested, nor was one given, concerning the weight that should be given to the "prior-act" evidence of the alleged statements to the young girl.

After the verdict of guilty was returned and post-trial motions made, writs of error were taken to both the conviction and the denial of a new trial.

The principal issue here is whether or not the evidence of the prior act was admissible. The general rule concerning the admission of evidence of prior acts by a defendant is set forth in sec. 904.04 (2), Stats.[2] This court has held that evidence of prior acts is admissible when such evidence is particularly probative in showing elements of the specific crime charged, including intent, identity, or a system of criminal activity. This type of evidence would not, however, be admissible merely to impugn the character of a defendant, or to show that as a result of such prior activities he is more apt to commit the particular type of crime. *Whitty v. State* (1967), 34

---

[2] "904.04 **Character evidence not admissible to prove conduct; exceptions; other crimes.**

". . .

"(2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Wis. 2d 278, 149 N. W. 2d 557, certiorari denied, 390 U. S. 959, 88 Sup. Ct. 1056, 19 L. Ed. 2d 1155.

There is no question that identity was an issue here, since the defendant denied being present when the rape occurred. There is also no question that an articulated preference for virgins is an identifying characteristic. It would stretch the bounds of naivete to say that there is nothing peculiar or strange in a rapist who stops an act of intercourse when he becomes satisfied in his own mind that his victim is not a virgin. Nothing in the record indicates that the interruption came about as a matter of remorse or contrition, since he then proceeded to rob the woman. Rather, it shows some particular quirk in the assailant's makeup, and therefore the similar statement made by the defendant to the fifteen-year-old girl takes on a significance that it would not otherwise warrant. The assailant's statements to the complainant on two separate occasions during his encounter with her showed his preoccupation with the subject matter. When in the presence of the girl's mother, stepfather, and sister, the defendant made a similar statement of a seriousness that caused them to call the police, it is plainly indicative of a similar desire to verbalize this particular interest.

The defendant challenges the probative value of evidence of the prior statement here because of the time lapse between August 30, 1971, when the statement was made to the fifteen-year-old girl, and the date of September 12, 1972, when the rape occurred. Further, defendant states that the circumstances of the alleged prior statement were dissimilar from those of the rape. This court has often said that the admissibility of prior-acts evidence depends on nearness in time, place, and circumstances to the alleged crime. *Whitty, supra,* at 294. This court has also said that rejection of evidence because of remoteness rests in the trial court's discretion. *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 166, 146 N. W. 2d 801. We find no case under which the evidence here would be

inadmissible because of the lapse of one year. In the case of *State v. Lombardi* (1959), 8 Wis. 2d 421, 440, 99 N. W. 2d 829, the alleged prior acts had occurred from a period of six months to two years prior to the date of the alleged crime, and evidence of the acts was held admissible. The element of remoteness in time must be balanced against the uniqueness of the prior act of which evidence is offered. Here we agree with the trial court that the prior act was of sufficient uniqueness that the lapse of one year did not make it so remote as to lack evidentiary value. Nor were the circumstances of the prior statement so dissimilar as to require its exclusion from evidence. The prior statement was not a playful jest; it was construed as a serious threat, as evidenced by the fact that the police were called to deal with the defendant.

We conclude that the defendant's compulsion to verbalize his interest in virgins was of sufficient probative value to warrant the trial court permitting this evidence to go to the jury. Since the earlier incident did not involve an actual rape, it was not the kind of an incident that would have prejudiced the jury to the extent of outweighing its probative value as to the defendant's identity, under circumstances where the defendant took the stand and specifically denied having even been anywhere near the complainant at any time during the period when the crime took place. The least that can be said is that it was within the discretion of the trial court, in view of all the facts and circumstances of the case, to determine whether or not the evidence should be permitted to have gone to the jury. We conclude that the trial court did not abuse its discretion in permitting the statement into evidence. The record shows that the trial court took the question of the admissibility of evidence of the defendant's prior statements under advisement as soon as the issue was raised. The court recessed the trial late in the afternoon, considered the matter during that

recess, and reached a conclusion prior to the time the court convened the next morning. The court's analysis of legal precedent shows that it was concerned with whether or not it had authority to admit this testimony into evidence, and satisfied itself that it had such authority. The court did, in fact, exercise its discretion in admitting the evidence. *State v. Hutnik* (1968), 39 Wis. 2d 754, 763, 764, 159 N. W. 2d 733.

The defense challenges the right of the state to have introduced the evidence of prior statements through cross-examination of the defendant, and later in rebuttal by putting into evidence the testimony of the fifteen-year-old girl. In a case presenting similar facts, this court has held that such a sequence of cross-examination and rebuttal testimony is a proper order of proof. *Parham v. State* (1972), 53 Wis. 2d 458, 192 N. W. 2d 838.

We hold that the defense claim of unfair surprise in the introduction of the prior act evidence is without merit. The defendant was fully apprised the day prior to the admission of the testimony in question that evidence of a prior statement might be used, and indicated his familiarity with the prior incident. The defense argues that if it had known that the prior statement might be introduced on cross-examination, the defendant might not have testified at all. This is essentially an argument that the prosecution was required to disclose its rebuttal witness to the defense. This contention was specifically rejected in *Whitty, supra,* at 297, as reaffirmed in *Cheney v. State* (1969), 44 Wis. 2d 454, 461–467, 171 N. W. 2d 339, 174 N. W. 2d 1. Since *Cheney,* there has been enacted sec. 971.23 (3), Stats.,[3] which requires prosecution

---

[3] "971.23 **Discovery and inspection.**

". . .

"(3) LIST OF WITNESSES. (a) A defendant may, not less than 15 days nor more than 30 days before trial, serve upon the district attorney an offer in writing to furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon

disclosure of witness upon defendant's request, but specifically excepts from this rule "rebuttal witnesses or those called for impeachment only." The present defendant cannot claim that the statute was violated, both because he failed to request a list of prosecution witnesses, *State v. Stewart* (1972), 56 Wis. 2d 278, 282, 201 N. W. 2d 754, and because even if he had, the "surprise" witness here testified in rebuttal, and would not have had to be identified according to the statute, *Okrasinski v. State* (1971), 51 Wis. 2d 210, 218, 186 N. W. 2d 314.

The defense also contends that the court should, on its own motion, have given an instruction to the jury defining and limiting the purpose of the prior-acts evidence to the issue of identity and not as substantive evidence of guilt. However, there was no request for such an instruction made. The problem for this court when no such request for instruction is made is to determine, from the record, whether it may have been a trial tactic on the part of the defense not to ask for such an instruction, out of a desire, for example, not to call further attention to the prior act. This court has consistently held that no sua sponte instruction need be given under circumstances where failure of a defendant to request an instruction may reasonably be part of a trial tactic, recently in the case of *Watson v. State* (1974), 64 Wis. 2d 264, 219 N. W. 2d 398.

We are also unable to conclude that the defendant probably should not have been found guilty, and that justice therefore demands that he be given another trial. Therefore, the request of the defendant for a new trial in the interest of justice, pursuant to sec. 251.09, Stats., is denied. *State v. Lambert* (1975), 68 Wis. 2d 523, 537, 229 N. W. 2d 622.

*By the Court.*—Judgment and order affirmed.

---

within 5 days after the receipt of such offer, the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at the trial. . . ."