STATE of Wisconsin, Plaintiff-Respondent,†

v.

Tony PAYANO, Defendant-Appellant.

Court of Appeals

*No. 2007AP1042–CR. Submitted on briefs January 31, 2008.
––Decided April 15, 2008.*

2008 WI App 74

(Also reported in 752 N.W.2d 378.)

† Petition to review granted 5/30/08. Oral argument held 12/9/08.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick Cavanaugh Brennan* and *James M. Bruss* of *von Briesen & Roper, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J. B. Van Hollen*, attorney general, and *Sarah K. Larson*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. Tony Payano appeals from the corrected judgment of conviction entered against him following a jury trial where he was found guilty of one count of second-degree reckless injury while using a dangerous weapon, contrary to WIS. STAT. §§ 940.23(2)(a) and 939.63, and two counts of second-degree recklessly endangering safety while using a dangerous weapon, contrary to WIS. STAT. § 941.30(2) and 939.63 (2003–04).[2] He contends that the trial court erred by admitting testimony offered by confidential informant Jason Kojis, which was drug-related other acts evidence. We agree with Payano and conclude that the trial court erroneously exercised its discretion in admitting Kojis' testimony and that the admission was not harmless. Accordingly, we reverse and remand for a new trial without the other acts evidence.

## I. BACKGROUND.

¶ 2. Payano's first trial in this matter resulted in a hung jury. Following the second jury trial, Payano was convicted of one count of second-degree reckless injury and two counts of second-degree recklessly endangering safety, all while using a dangerous weapon.

---

[2] The original judgment of conviction misstated the crimes Payano was found guilty of committing.

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 3. Payano's convictions stem from an incident which occurred on October 3, 2005. In the afternoon on that date, several Milwaukee police officers were in the process of executing a no-knock search warrant for the apartment where Payano resided with his family, based on information received from Kojis, a confidential informant for the Milwaukee Police Department.

¶ 4. Prior to the officers' arrival at the apartment building, Payano, his uncle, and his cousins had been out completing job applications. Upon returning to the apartment building, Payano went inside to the apartment where he lived with his family. Shortly thereafter, Payano heard footsteps and his cousin screaming. Once his cousin entered the apartment, Payano locked the door. Payano testified that his cousin was scared and kept saying, "It's not me. It's not me," and "They are confusing me with someone."

¶ 5. Payano asked his cousin who he was referring to, but testified that his cousin did not give him an answer. Upon seeing that the door to the apartment was starting to break as the unknown individuals attempted to get into the apartment, Payano told his mother, who was also in the apartment, to call the police. His mother, who was in hysterics and did not speak English, was unable to make the call. As the door was breaking, Payano retrieved a gun hidden under the couch in the apartment and fired one shot. Payano testified that he did not know that the men on the other side of the door were police officers. He further testified that at the time of the incident, although he knew a few words, he otherwise did not speak English.

¶ 6. After Payano fired the shot, a number of gunshots were fired in response from the individuals outside the door. He testified that he, his cousin, and his mother then sought refuge in the apartment's bath-

231

room, with all three in the bathtub. His mother still had the telephone in her hand, and Payano proceeded to call 9–1-1. After making the call, Payano heard a knock at the bathroom door and the word "police," at which point he left the bathroom. Before doing so, however, he placed the gun in the toilet tank.

¶ 7.	The officers' testimony at trial was that two unmarked squad cars pulled up outside of the apartment building where Payano lived and saw a person, who turned out to be Payano's cousin, immediately run into the building. Three officers in plain clothes and one uniformed officer, who was slightly behind the other three, gave chase. The officers testified that they identified themselves as police officers in both English and Spanish as they followed Payano's cousin into the building.

¶ 8.	While they attempted to open the door to Payano's apartment using a sledgehammer, the officers continued to identify themselves as Milwaukee police officers. An officer testified that once the door was opened approximately twelve inches, he saw Payano pointing a gun at him and heard one shot fired, which hit him in his left arm. Although the officer was in plain clothes at the time, he wore a bulletproof blue vest over his shirt and his badge hung around his neck.

¶ 9.	The State's theory at trial was that Payano fired the shot because he needed time to destroy evidence of drugs in the apartment. Payano's version was that he fired the shot to protect himself, his cousin, and his mother from the intruders who were breaking down the door to his family's apartment.

¶ 10.	Kojis did not testify at the first trial. To support the admission of Kojis' testimony during the second trial, the prosecutor argued that the testimony

would be presented to rebut Payano's claim that he acted in self-defense. He argued:

> What I am going to say is that the finder of fact in determining the reasonableness of firing a shot through a closed door during the execution of a search warrant has an absolute right to know the context that this person who is the subject of the search warrant, a target of the search warrant who fires that shot was observed sorting through the cocaine with the [.]380 on the table the day before. It directly goes to rebut the defense in this case.

¶ 11. In concluding that Kojis' testimony was admissible, the trial court agreed and stated:

> The jury [in the first trial], I believe, was left with the impression that this search warrant was somehow arbitrary, based on nothing, that the police came storming into a place with no basis really for doing that, that it may have been somehow a violation of Mr. Payano's rights, that Mr. Payano was a sometime beautician or hair cutter, that his English was not good, and that he had no reason to expect the police to be coming. And in that context, I think self-defense is framed somewhat differently.
>
> . . . .
>
> The jury clearly has to be able to deal with what is reasonable under those circumstances for a reasonable person. I think that the testimony from Mr. Kojis, which clearly places into context what the police were doing there and what Mr. Payano was observed with on the day before, helps the jury to assess reasonability. It does provide, I think, a somewhat different understanding for the jury about what was going on.
>
> It does not obviously give the jury the answer about what was in Mr. Payano's mind or what he understood. Those issues are still for them to deal with.

233

The trial court prohibited the State from suggesting that Payano was a drug dealer and required that Kojis testify that he did not go to Payano's residence looking for drugs, that neither Kojis nor his friend bought drugs, and that no drug transactions occurred while Kojis was present at Payano's residence.

¶ 12. During the second trial, Kojis testified that on the day prior to the incident, he went to Payano's residence with a friend. On that day, Kojis recalled seeing Payano in the kitchen of Payano's apartment packaging cocaine. In addition, Kojis testified that a .380 caliber pistol was on the table in the kitchen. According to Kojis, neither he nor his friend attempted to buy any drugs, and he did not see anyone else purchase drugs from Payano. The next morning, Kojis testified that he informed the officer of what he observed at Payano's residence. The officer subsequently obtained the no-knock search warrant that led to this incident.

¶ 13. On appeal, Payano argues that the trial court erred when it admitted Kojis' testimony and that the error was not harmless.

## II. ANALYSIS.

### A. *Admission of other acts evidence.*

■

¶ 14. Wisconsin Stat. § 904.04(2) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show that the person acted in conformity therewith." Excluded from this prohibition, however, is "evidence . . . offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

234

The list included in the statutory text "is not exclusionary but, rather, illustrative." *State v. Shillcutt*, 116 Wis. 2d 227, 236, 341 N.W.2d 716 (Ct. App. 1983).

■

¶ 15. The three-step analytical framework we employ to determine whether other acts of a defendant are admissible is set forth in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). First, we analyze whether the State offered the other acts evidence for a purpose that comports with Wis. Stat. § 904.04(2). *Sullivan*, 216 Wis. 2d at 783. Next, we consider whether the other acts evidence is relevant. *Id.* at 785. Lastly, we "determine whether the [trial] court erroneously exercised its discretion in weighing the probative value of the other acts evidence against the danger of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time or needless presentation of cumulative evidence." *Id.* at 789.

■

¶ 16. "[T]he test is not whether this court agrees with the ruling of the trial court, but whether appropriate discretion was in fact exercised." *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983) (citation omitted). In reviewing the trial court's decision to admit other acts evidence, we are asked to determine " 'whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Davidson*, 2000 WI 91, ¶ 53, 236 Wis. 2d 537, 613 N.W.2d 606 (citations and one set of quotation marks omitted). We will affirm so long as "the trial court reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion." *Id.* Only in those situations where the trial court failed to articulate its reasoning will we review the record *de novo* to

determine whether there is a reasonable basis to uphold the trial court's discretionary decision. *Id.*

1. Whether the trial court properly exercised its discretion in concluding that the State offered Kojis' testimony for a purpose that comports with Wis. Stat. § 904.04(2).

¶ 17. The State argues that Kojis' testimony was offered to provide context and rebut the theory of the defense, both purposes it contends are acceptable under Wis. Stat. § 904.04(2). The trial court agreed and allowed Kojis' testimony, "which clearly place[d] into context what the police were doing [at Payano's residence] and what Mr. Payano was observed with on the day before, [and] helps the jury to assess reasonability," with respect to Payano's self-defense claim.

■

¶ 18. Other acts evidence is permissible to show the context of the crime and provide an explanation of the case. *Shillcutt,* 116 Wis. 2d at 236; *see also State v. Clemons,* 164 Wis. 2d 506, 514, 476 N.W.2d 283 (Ct. App. 1991) (stating that "[o]ne basis upon which evidence of other crimes may be admitted is if the evidence . . . is required in order to give a complete presentation of the case at trial"). Other acts evidence also has been admitted to rebut a theory of defense. *See generally State v. Kourtidias,* 206 Wis. 2d 574, 582, 557 N.W.2d 858 (Ct. App. 1996).

■

¶ 19. We conclude that the trial court properly exercised its discretion in finding that the State offered the other acts evidence for purposes that comport with Wis. Stat. § 904.04(2), thus satisfying the first step in

236

the *Sullivan* analysis. *Id.*, 216 Wis. 2d at 783; *see Davidson*, 236 Wis. 2d 537, ¶ 53.

2. Whether Kojis' testimony was relevant.

■

¶ 20. Turning to the second step in the *Sullivan* framework, we are to determine whether the other acts evidence is relevant. *Id.*, 216 Wis. 2d at 785. The State, as the party seeking to use Kojis' testimony, has the burden to establish its relevance. *State v. Hunt*, 2003 WI 81, ¶ 53, 263 Wis. 2d 1, 666 N.W.2d 771.

■

¶ 21. "Relevant evidence" is defined in Wis. Stat. § 904.01 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A relevance determination has two components: (1) "whether the evidence relates to a fact or proposition that is of consequence to the determination of the action"; and (2) "whether the evidence has a tendency to make a consequential fact more probable or less probable than it would be without the evidence." *Sullivan*, 216 Wis. 2d at 785–86.

¶ 22. The self-defense privilege, set forth in Wis. Stat. § 939.48(1), allows a person "to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person." The privilege extends to the protection of third persons. Sec. 939.48(4). Thus, we must determine whether Kojis' testimony concerned a fact of consequence to the determination of the action —namely, the reasonableness of Payano's belief that he

237

was acting in self-defense—and if so, whether it made the existence of that fact more or less probable. *See Sullivan*, 216 Wis. 2d at 785–86.

¶ 23. The State argues that Kojis' testimony satisfies both components. First, the State asserts Kojis' testimony was of consequence to Payano's self-defense claim, "because the evidence went to the very heart of *why* Payano shot through the door and *what* Payano knew at the time he fired the shot." (Emphasis in State's brief.) With respect to the second component, the State contends that Kojis' testimony made Payano's self-defense claim "*less* probable than it would be without the evidence, because the evidence helped explain why Payano would reasonably have known that the police had a search warrant and were knocking down his door with a sledgehammer, thereby refuting his self-defense claim." (Emphasis in State's brief.) We disagree in both regards.

¶ 24. Setting aside the State's conclusory assumption that Kojis' testimony provides insight as to what was going on inside Payano's head when he fired the gun, we are not persuaded that Kojis' testimony regarding the presence of cocaine and a gun at Payano's residence the day before supports the inference urged by the State, i.e., that Payano would reasonably have known the police had a search warrant. Instead, we agree with Payano that the alleged presence of cocaine at his residence the day before the shooting "no more supports the proposition that he thus believed that the men attempting to break down his door were police, than it does the notion that Payano believed they were hoodlums seeking to harm him, his mother, and his cousin, and steal the cocaine."

¶ 25. Moreover, the trial court's stated rationale for admitting Kojis' testimony, that the jury in the first

238

trial "was left with the impression that this search warrant was somehow arbitrary, based on nothing, [and] that the police came storming into a place with no basis really for doing that, that it may have been somehow a violation of Mr. Payano's rights," is not pertinent to our relevancy determination. This case does not center on the police officers' conduct in executing the no-knock search warrant and whether that conduct was appropriate; rather, the issue is whether Payano legitimately believed he was being attacked by non-police officers and fired the shot in self-defense. Kojis' testimony was not relevant to this determination, and, as such, the trial court erroneously exercised its discretion in admitting it.

3. Whether the trial court erroneously exercised its discretion in balancing the probative value of Kojis' testimony and unfair prejudice.

¶ 26. Even if we had determined that Kojis' testimony was relevant, we would nevertheless conclude that the danger of unfair prejudice outweighed the probative value of Kojis' testimony under the third step of *Sullivan*'s analytical framework. This step calls for a "weighing [of] the probative value of the other acts evidence against the danger of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time or needless presentation of cumulative evidence." *Id.*, 216 Wis. 2d at 789; *see also* Wis. Stat. § 904.03. The trial court did not expressly find that the probative value of Kojis' testimony was not substantially outweighed by its prejudicial effect, but the inference following the admission of Kojis' testimony into evidence is that this was the trial

court's conclusion. *See State v. Fishnick*, 127 Wis. 2d 247, 262, 378 N.W.2d 272 (1985).

¶ 27. Payano, as the challenger to the admissibility of Kojis' testimony, has the burden in this regard. *Hunt*, 263 Wis. 2d 1, ¶ 53. "The inquiry is not whether the other acts evidence is prejudicial but whether it is *unfairly* prejudicial." *State v. Gray*, 225 Wis. 2d 39, 64, 590 N.W.2d 918 (1999) (emphasis in *Gray*). In addition, "[t]he term 'substantially' indicates that if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted." *State v. Speer*, 176 Wis. 2d 1101, 1115, 501 N.W.2d 429 (1993).

¶ 28. In determining that Kojis' testimony was not relevant to the reasonableness of Payano's belief that he was acting in self-defense, we have already concluded that the probative value of Kojis' testimony, if any, is negligible. As a result, we turn our focus to the issue of unfair prejudice.

¶ 29. Payano contends that he was unfairly prejudiced by Kojis' testimony because it created the perception that he was a drug dealer, despite the fact that he was not charged with a drug-related offense. In addition, Payano argues that the limits imposed by the trial court on Kojis' testimony and the prosecutor's allowable references to it were insufficient to mitigate the prejudicial effect.

¶ 30. In considering Payano's claim of unfair prejudice, our focus "is the potential harm in a jury's concluding that because an actor committed one bad act, he necessarily committed the crime with which he is now charged." *Fishnick*, 127 Wis. 2d at 261–62. If Kojis' testimony "has a tendency to influence the out-

come by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case," we will conclude that unfair prejudice resulted. *Sullivan*, 216 Wis. 2d at 789–90.

¶ 31. The jury heard that Payano was seen packaging cocaine with a gun on the table at his residence. Although the trial court prohibited the State from suggesting that Payano was a drug dealer, this was the logical inference for the jury to draw. At that point, the trial court's limitation on testimony regarding whether or not Kojis and Payano talked about drugs, whether Kojis and his friend attempted to buy drugs, and any other testimony along these lines was insufficient to negate the prejudicial effect. The jury heard enough to infer that Kojis was a drug trafficker.

¶ 32. We conclude that Kojis' testimony caused unfair prejudice. Consequently, the trial court erroneously exercised its discretion in admitting the other acts evidence.

*B. Harmless Error.*

¶ 33. Due to our conclusion that the trial court erred in admitting the other acts evidence, we must determine whether the error was harmless. An error will be deemed harmless if it does not affect the defendant's substantial rights. Wis. Stat. § 805.18(2) (2005–06). To make this determination, "the test [is] whether there is a reasonable possibility that the error contributed to the conviction. If it did, reversal and a new trial must result." *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). The State, as the benefi-

ciary of the error, has the burden "to establish that there is no reasonable possibility that the error contributed to the conviction." *Id.* Our "focus [is] on whether the error undermines our confidence in the case's outcome," *State v. Thoms*, 228 Wis. 2d 868, 873, 599 N.W.2d 84 (Ct. App. 1999), and in this case, we conclude that it does.

¶ 34. In arguing that the error in admitting the other acts evidence was harmless, the State contends: Payano and his cousin knew that police officers were at the door, making his self-defense claim unreasonable; Payano's admission to police that he heard the people at the door say that they were the police before he fired the shot and his testimony at trial, which described actions such as hiding the gun in the toilet tank, were inconsistent with someone who was acting in self-defense; and the prosecutor's statements to the jury cautioning that Kojis' testimony was only relevant as to the issue of self-defense minimized any prejudicial effect.

¶ 35. The factual issues referenced by the State regarding what Payano and his cousin knew prior to the shooting and the effect of Payano's admission and actions do not negate the effect of Kojis' testimony. Likewise, admonitions by the prosecutor fall short of persuading us that there is no reasonable possibility that the admission of Kojis' testimony contributed to Payano's conviction. *See Dyess*, 124 Wis. 2d at 543. Although the prosecutor complied with the trial court's restriction, which precluded the State from suggesting that Payano was a drug dealer, we agree with Payano that "[n]o matter how the prosecutor characterized the case before the jury, the jury cannot have helped but take Kojis's testimony as evidence Payano was a drug dealer."

¶ 36. Although the State argues that the result of Payano's second trial would have been the same even without the admission of Kojis' testimony, we do not reach the same conclusion, due to the fact that without Kojis' testimony in the first trial, a mistrial resulted due to a hung jury. According to the State, there are a number of reasons for why the second jury came to the conclusion it did, including that "the same witnesses may have seemed more or less credible to the second jury. Or the jurors themselves may have had different biases and opinions than the jurors in the first trial. Or the 9[-]1[-]1 call may have had a different impact on the second trial's jurors." While we recognize that no two trials are identical and that a number of factors were at play, we cannot say with "certain[ty] that the error did not influence the jury 'or had such slight effect as to be de minimus.' " *Thoms*, 228 Wis. 2d at 873 (quoting *Dyess*, 124 Wis. 2d at 541–42).

¶ 37. Kojis' testimony, when presented to the jury, "created a definite risk that the conviction might be based on that evidence." *State v. Spraggin*, 77 Wis. 2d 89, 101–02, 252 N.W.2d 94 (1977). We cannot conclude that its admission was harmless. Accordingly, we reverse the judgment of conviction and remand for a new trial consistent with the holding set forth in this opinion.

*By the Court.*—Judgment reversed and cause remanded.