STATE of Wisconsin, Plaintiff-Respondent,†

v.

John J. THOMS, Defendant-Appellant.

Court of Appeals

*No. 98–3260–CR. Submitted on briefs May 17, 1999.—Decided June 22, 1999.*

(Also reported in 599 N.W.2d 84.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven L. Miller* of *Miller & Miller* of River Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Paul Lundsten*, assistant attorney general of Madison.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J.   John Thoms appeals both a judgment of conviction for second-degree sexual assault, contrary to § 940.225(2)(a), STATS., as a repeat offender and his sentence of life in prison without the possibility of parole as a persistent repeater, pursuant to § 939.62, STATS. This appeal presents two issues: (1) whether the admission of other acts evidence constitutes harmless error; and (2) whether the trial court properly sentenced Thoms to life pursuant to the persistent repeater charge in the information, § 939.62(2m), when the previous criminal complaint charged Thoms as a repeater under § 939.62(1)(c) and (2), which add ten years to the possible sentence.

Regarding the repeater charge, we hold that the trial court improperly sentenced Thoms as a persistent repeater under § 939.62(2m), STATS., because when the State identified a persistent repeater charge in the information that differed from the repeater charge identified in the criminal complaint, it abandoned the repeater charge in the complaint. As the State concedes, the information's persistent repeater charge fails to comply with § 973.12(1), STATS., and is therefore

invalid. It follows that because the State did not pursue the original repeater charge in the complaint and because the repeater charge in the information is invalid, no penalty enhancer remains.

Regarding the admission of the other acts evidence, we conclude that because there is a reasonable possibility the erroneous admission of other acts evidence affected the trial's outcome, the error was not harmless. Because the error was not harmless, we reverse the judgment and remand for a new trial without the other acts evidence.

## I.  Other Acts Evidence and Harmless Error

### 1.  Facts

The State charged forty-six-year-old Thoms with sexually assaulting the complainant, his thirty-eight-year-old sister. It is undisputed that the complainant is an admitted alcoholic and was highly intoxicated when the alleged assault occurred. The complainant testified that on June 1, 1997, in Lac du Flambeau, she and Thoms agreed to "go for a ride and drink" in a pickup truck Thoms was driving. While driving, they stopped at the cemetery to visit their father's grave site.

The complainant testified that she and Thoms drove along rural roads until he stopped the truck and sexually assaulted her. The two then continued driving, and once again, Thoms stopped the truck and sexually assaulted her. During the assaults, which all occurred in the truck, Thoms choked her and pulled her hair. Thoms drove to their mother's home, took his mother to the casino, and told the complainant that when he returned, he would once again assault her. The complainant further stated that immediately after Thoms left with his mother, she ran two houses down

the street to her sister's home (also Thoms' sister), J., where J. called 911. The complainant was transported to a local hospital via ambulance.

Thoms denied assaulting the complainant and gave a different version of the day's events. According to Thoms' testimony, he and the complainant drove to the cemetery. When they arrived at the cemetery, the complainant began pouring beer on her father's grave.[1] Thoms objected to her behavior, and in response, the complainant became profane and vulgar. Thoms drove back to town and dropped the complainant off at their mother's home. Thoms then returned to the cemetery for approximately one to one-and-one-half hours before returning to his mother's house. On arrival at his mother's house, he found the complainant and J. intoxicated, and they accused him of owing J. money. After the complainant and J. left, Thoms and his mother went to the casino.

Before the trial, J. supported the complainant's account of the incident, but at trial, she corroborated Thoms' account. At trial, J. admitted that she "falsely schemed to falsely accuse" her brother of sexually assaulting the complainant because she was "very angry" concerning some money she had loaned him that he had failed to repay. J. acknowledged that at the time of the incident, she was a cocaine addict and wanted the money she had loaned to Thoms so she could purchase drugs. Contrary to the complainant's testimony, J. testified that although she (J.) made the 911 call, the complainant spoke to the dispatcher.

The trial court permitted the State to present other acts evidence regarding two alleged incidents

---

[1] The sister testified that she poured a can of beer on her father's grave because she and her father were "drinking partner[s]," and she wanted "[t]o give him a drink."

from 1983. The first incident involved Thoms attacking a stranger in her apartment. According to a criminal complaint, Thoms entered a stranger's apartment and placed his hands over her throat and pushed her onto the living room floor. After Thoms left, the stranger discovered a knife on the floor that did not belong to her. In admitting the other acts evidence, the trial court stated that its decision was guided by the principle that "there should be latitude in the evidence allowed in a sex crimes case."

In the second incident, Thoms was accused of sexually assaulting his nineteen-year-old niece. After a night of heavy drinking, Thoms and his niece went to a friend's apartment and "smoked pot." Thoms allegedly sexually assaulted his niece on several occasions that evening and also hit her. At trial, Thoms testified that although he had a social relationship with his niece and had often accompanied her to bars, he did not sexually assault her.

The trial court instructed the jury that it could consider the other acts evidence only as to the "[d]efendant's common plan or scheme to obtain sexual gratification by force." The jury convicted Thoms of sexually assaulting the complainant, and Thoms appeals.

## 2.   Analysis

Significantly, the State concedes that, pursuant to *State v. DeKeyser*, 221 Wis. 2d 435, 585 N.W.2d 668 (Ct. App. 1998), the trial court erroneously admitted the other acts evidence, but argues that the error was harmless because it did not affect the verdict. *See State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985); *see also* § 805.18(2), STATS. Because the State

concedes error, we address only whether the error was harmless.

The State's harmless error argument rests solely on evidence that after his arrest, Thoms shaved his pubic hair and then denied shaving it. The State reasons that "[t]he only reason the defendant would have shaved his pubic hair, and lied about it later, was that he was trying to eliminate the possibility that police would . . . discover one of the victim's pubic hairs entangled among" Thoms'. According to the State, even without the other acts evidence, a jury would have concluded that Thoms' shaving "showed consciousness of guilt and amounted to an unwitting admission that he had assaulted his sister." We are not persuaded.

■■■

Error in admitting other acts evidence is subject to harmless error analysis. *See, e.g., State v. Grant*, 139 Wis. 2d 45, 52–53, 406 N.W.2d 744, 747 (1987). The test for harmless error is whether there is a reasonable possibility that the error contributed to the conviction. *Dyess*, 124 Wis. 2d at 543, 370 N.W.2d at 231–32. The beneficiary of the error, here the State, has the burden to establish that the test has been met. *State v. Sullivan*, 216 Wis. 2d 768, 792, 576 N.W.2d 30, 41 (1998). The conviction must be reversed unless the court is certain that the error did not influence the jury "or had such slight effect as to be de minimus." *Dyess*, 124 Wis. 2d at 541–42, 370 N.W.2d at 231. In determining if harmless error exists, we focus on whether the error undermines our confidence in the case's outcome, *Grant*, 139 Wis. 2d at 53, 406 N.W.2d at 747–48, and to do so, we must consider the error in the context of the entire trial and consider the strength of untainted evidence. *See id.* at 53, 406 N.W.2d at 748. Based on this standard of review and our careful review of the record,

we conclude that the State failed to prove that the error did not contribute to the conviction.

As with most sexual assault cases, Thoms' conviction rests on the jury's credibility determinations. As the State concedes, the complainant's trial testimony was inconsistent with a signed affidavit, her statements to witnesses, and her statements to police immediately following the assault. First, about one month after the assault and before trial, the complainant signed a notarized affidavit in which she recanted the sexual assault. By contrast, at trial, she testified that Thoms had indeed sexually assaulted her. She explained that she resided with her mother and had signed the affidavit because her mother had threatened to "kick [her] out of the house" if she refused to recant. Second, other witnesses testified that the complainant admitted to them that Thoms had not sexually assaulted her.

Third, her statements to police immediately after the assault were likewise inconsistent with her trial testimony. Before trial, she said that underwear found at the roadside was hers, but at trial, she did not recognize the underwear. Additionally, immediately after the alleged assault, she told a police officer that Thoms had penetrated her anally, but at trial, she denied it. These inconsistencies undermined her credibility.

Given her inconsistent statements, any evidence that tended to support one version over the other necessarily influenced the jury. The other acts evidence dominated the trial, and the State repeatedly played on that fact in its closing statement by emphasizing the tainted other acts evidence and using it to contest Thoms' credibility. For example, in its closing argument, the State told the jury that the other acts evidence was received to show Thoms' "common plan or

scheme to obtain sexual gratification by force." The State carefully compared the choking, hair pulling, and alcohol consumption in the complainant's case to the facts in the 1983 other acts. The State argued that like the other acts, the complainant here was the victim of a "blitz attack." In addition, after the State stressed that it was the jury's job to determine credibility, it used Thoms' trial testimony regarding the other acts to argue that Thoms was not credible. For example, regarding the alleged sexual assault of his niece, the State argued that if Thoms and his niece were so close and had been out twenty or twenty-five times, he would know more about her personal life than his testimony reflected. In short, credibility attacks on Thoms permeated the closing arguments, and those credibility attacks relied heavily on the tainted other acts evidence.

As is apparent, the other acts evidence supported the complainant's version. In context of the entire trial, and considering the weakness of the untainted evidence upon which the State relies (the shaving), the admission of the other acts evidence seriously undermines our confidence in the outcome. *See Grant*, 139 Wis. 2d at 53, 406 N.W.2d at 747–48.

The strength of the untainted evidence, the shaving testimony, pales in comparison to the other acts evidence used to attack Thoms' credibility. The State argued that the day after his arrest, Thoms shaved in the shower. No jail personnel saw Thoms shave; rather, the detective present when body samples were taken, including pubic hair samples, testified that it "appeared" Thoms was freshly shaven. The detective further testified that in his opinion, the incompleteness of Thoms' shaving job indicated that he was not naturally lacking hair. To the contrary, Thoms denied

shaving and testified that he naturally has very little pubic hair; Thoms' wife also testified that she had never seen his pubic hair longer than "a little razor stubble."

Compared to the strength of the other acts evidence, the shaving evidence is too weak to support the verdict. Because the State has failed to meet its burden to show that the error was harmless, we remand this case to the trial court for a new trial without the other acts evidence.

## II. Persistent Repeater Charge

### 1. Facts

The parties do not dispute the following procedural facts. In June 1997, the State charged Thoms with one count of second-degree sexual assault, contrary to § 940.225(2)(a), STATS., as a repeater, pursuant to § 939.62(1)(c) and (2), STATS. The sexual assault charge carries a twenty-year sentence, and the repeater adds ten years. In the complaint, the State specifically alleged one prior felony, a theft charge. By contrast, the subsequent July 1997 information charged Thoms as a persistent repeater pursuant to § 939.62(2m), STATS., a statute mandating a life sentence without the possibility of parole. Of particular note, the information described no prior convictions as required by § 939.62(2m), and is therefore, as the State concedes, invalid.

After the jury convicted Thoms of second-degree sexual assault, the trial court immediately sentenced him to life imprisonment without the possibility of parole under § 939.62(2m), STATS., the persistent repeater charge listed in the information.

## 2. Analysis

Thoms argues that the State abandoned the original repeater charge in the complaint when it "recharged" him as a persistent repeater in the information. He further reasons that because the information's persistent repeater allegation is admittedly invalid and because the original repeater allegation is abandoned, he is not subject to a penalty enhancer. The State concedes that under § 973.12(1), STATS., Thoms was improperly sentenced as a persistent repeater under § 939.62(2m), STATS., because the information's failure to identify two specific prior serious felonies renders the repeater charge invalid. Despite this concession, the State maintains that Thoms is still subject to the complaint's original repeater penalty enhancer because the specified prior conviction in the complaint complies with § 973.12(1). Pursuant to the State's argument, the repeater allegation in the complaint subjects Thoms to a ten-year enhancement, increasing his maximum sentence to thirty years, rather than twenty. We agree with Thoms.

Section 973.12(1), STATS., provides, in pertinent part:

> Whenever a person charged with a crime will be a repeater or a persistent repeater under s. 939.62 if convicted, any applicable prior convictions may be alleged in the complaint, indictment or information or amendments so alleging at any time before or at arraignment, and before acceptance of any plea.

The application of § 973.12(1), STATS., to the undisputed procedural facts presents a question of law we review de novo. *See State v. Campbell*, 201 Wis. 2d 783,

788, 549 N.W.2d 501, 503 (Ct. App. 1996). Section 973.12(1), STATS., plainly allows the State to allege the prior convictions in the complaint or information at any time before or at arraignment and before acceptance of a plea. In this case, the State's criminal complaint charged Thoms as a repeater under § 939.62(1)(c) and (2), the ten-year enhancer. The State then elected to change the statutory basis for the repeater to § 939.62(2m), the mandatory life enhancer, in the information. When it charged Thoms under subsection (2m) in the information, it was no longer charging him under subsections (1)(c) and (2)'s ten-year enhancer. The repeater charge in the information is an entirely separate and new charge that replaced the original repeater charge in the complaint.

Thus, we hold that when the new and separate repeater charge in the information turns out to be invalid, as the State here concedes it is, the State is not entitled to look back and resurrect the charge it forsook in the complaint. The charge in the complaint no longer exists; the State abandoned it when it alleged a different repeater in the information.

To support its argument, the State relies on *State v. Trammel*, 141 Wis. 2d 74, 78–79, 413 N.W.2d 657, 659 (Ct. App. 1987); and *State v. Gerard*, 189 Wis. 2d 505, 516–17, 525 N.W.2d 718, 722–23 (1995). These cases are readily distinguishable because neither addresses the situation in which the State elects to change the repeater charge from one type in the complaint to another in the information.

In *Trammel*, we addressed whether, after a jury trial, the trial court properly sentenced Trammel as a repeater when the complaint, but not the information, alleged his repeater status. *See id.* at 76, 413 N.W.2d at 658. We concluded that while minimum due process

requires notice of a claim, Trammel's due process rights were fully protected because the complaint provided the proper notice. *Id.* at 80, 413 N.W.2d at 659. Here, the information was not silent, but alleged an entirely different and separate repeater charge. Thus, *Trammel* does not aid in our analysis here.

Likewise, *Gerard* is distinguishable. In *Gerard,* the complaint and the information alleged the same incorrect repeater charge. *See id.* at 509–10, 525 N.W.2d at 719. The circuit court granted the State's post-arraignment request to amend the information due to a scrivener's error. *See id.* at 510, 525 N.W.2d at 719. The supreme court held that when the information correctly alleges a defendant's repeater status, a post-arraignment amendment to the information does not violate § 973.12, STATS., if it does not affect the sufficiency of the notice to the defendant concerning his or her repeater status. *See id.* at 514–15, 525 N.W.2d at 721; *see also Campbell,* 201 Wis. 2d at 791, 549 N.W.2d at 504 (interpreting *Gerard*). In sharp contrast, the repeater charge in the complaint and information here are different, and the repeater charge in the information is invalid.

In this case, the State abandoned the complaint's repeater allegation when it identified a different repeater allegation in the information. We agree with Thoms that the State cannot resurrect a repeater allegation it elected to drop by belatedly conceding that it improperly charged the subsequent persistent repeater enhancement. Accordingly, no penalty enhancer remains.

*By the Court.*—Judgment reversed and cause remanded.

MYSE, P.J. *(concurring)*. In this case, I agree with the majority that the enhancer set forth in the information was void and that the State could not rely on the enhancer allegation contained in the criminal complaint. I fear, however, that the majority has painted with too broad a brush. The question is whether John Thoms received adequate notice. I conclude that in this instance, Thoms did not receive adequate notice that he was charged with the penalty enhancer originally charged in the criminal complaint, but omitted from the information. *See, e.g., State v. Gerard*, 189 Wis. 2d 505, 512, 525 N.W.2d 718, 720 (1995); *State v. Campbell*, 201 Wis. 2d 783, 791, 549 N.W.2d 501, 504 (Ct. App. 1996).

There are cases, however, when the facts may be sufficient to conclude that the defendant received adequate notice that the State was relying on a specific prior conviction for penalty enhancement. Let us consider this hypothetical case. Suppose, that a criminal complaint alleged an enhancer based on felony A. Suppose further, that the criminal information contains an enhancer based upon a properly alleged felony A, but a defectively alleged second felony. The circumstances of this hypothetical case may be sufficient to conclude that the defendant had adequate notice that the State was enhancing his penalty based on his prior felony A conviction. I therefore conclude that whether an improperly alleged enhancer in the information supersedes a properly alleged enhancer in the criminal complaint must be determined by the facts of the individual case. If, in a specific case, there is adequate notice that the State intends to use a prior conviction

880

for enhancement purposes, the prior offense may enhance the permissible punishment.