COURT OF APPEALS
DECISION
DATED AND FILED

May 9, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP944-CR**

Cir. Ct. No. 2018CF3556

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

VAYDA S. HERRERA,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID A. FEISS, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Vayda S. Herrera appeals from a judgment for physical abuse of a child, recklessly causing great bodily harm, and an order denying postconviction relief. On appeal, Herrera contends that: (1) the circuit court erred when it failed to hold a postconviction evidentiary hearing on her newly discovered evidence claim; and (2) the circuit court erred when it granted the State's pretrial other-acts motion. For the reasons discussed below, we reject Herrera's arguments and affirm.

## BACKGROUND

¶2     On the morning of July 3, 2018, Leah Altenburg, C.C.'s KinderCare teacher, noticed swelling to four-year-old C.C.'s right hand. When C.C. was asked what happened, he stated that his dad's girlfriend, Herrera, cracks his knuckles. C.C. was taken to Children's Hospital, where he was diagnosed with fractures at the base of his third and fourth fingers on his right hand. Herrera was charged with physical abuse of a child, intentionally causing bodily harm. Subsequently, an amended information was filed charging Herrera with physical abuse of a child, recklessly causing great bodily harm.

¶3     Prior to trial, the State moved to admit other-acts evidence that two or three months before July 3, 2018, Altenburg had noticed that C.C.'s hand was swollen, and at that time, C.C. said that Herrera cracks his fingers when he had a bad day at daycare. The State also sought to introduce evidence that in June 2018, C.C. had a broken arm, and during a forensic interview, stated that Herrera had broken his arm.

¶4     The defense contended that the other-acts evidence should not be admitted. In regards to the hand injury evidence, the defense argued that there was no independent evidence that the injury had occurred, such as a doctor's report,

police report, or Child Protective Services (CPS) report.  In regards to the broken arm evidence, the defense noted that the prosecutor who had filed the other-acts motion had received an opinion from Dr. Judy Guinn that it was "inconclusive as to whether that was caused by an injury[.]"

¶5    The circuit court granted the other-acts motion.  The court found that the evidence was admissible to show intent and absence of mistake, and was relevant.  The court further found that while the evidence was prejudicial, the evidence was not unfairly prejudicial.

¶6    On the day of trial, trial counsel informed the court that he was not going to call C.C.'s father, S.C., who was on the defense witness list.  The prosecutor responded that she intended to call S.C.  Trial counsel stated that if S.C. testified, counsel was "virtually certain" that S.C. would commit perjury.

¶7    During trial, the State called multiple witnesses, including Altenburg.  Altenburg testified that on July 3, 2018, she noticed that C.C.'s hand was swollen at daycare.  When she asked C.C. what happened, he said that Herrera "will be mad if I say, if I tell."  Altenburg told C.C. that he could trust her and she "will make sure that nothing happens to you."  C.C. then told her that Herrera was cracking his fingers, and demonstrated how Herrera would bend his fingers all the way back.  Altenburg reported C.C.'s allegation to the KinderCare Director, Theresa Castronovo.

¶8    Castronovo testified that on July 3, 2018, one of C.C.'s hands was "round like a ball" and his fingers were swollen.  When Castronovo asked C.C. what happened to his hand, he did not respond.  Castronovo then told C.C. that she was going to call his father, S.C., to ask what happened.  C.C. got upset and said, "don't call him, don't call him."  After C.C. left her office, Castronovo called

CPS. Castronovo also spoke to S.C. on the phone. S.C. claimed that he had not seen C.C. all day and told Castronovo to speak with Herrera.

¶9    In addition, Castronovo testified that she had previously seen C.C. with his arm in a cast, and when asked, C.C. stated that he fell off a slide at the park. Castronovo did not suspect any abuse and did not contact CPS about C.C.'s broken arm.

¶10    Shawneice Griffin, a CPS specialist, responded to the KinderCare call regarding C.C. When she met with C.C., Griffin noted that C.C.'s fingers were discolored and swollen, so she took him to Children's Hospital. At the hospital, Griffin was present when C.C. was asked how his hand got injured, and C.C. responded that he was scared and he did not want Herrera to find out they were looking at his hands. C.C. then stated that Herrera bends his hand backwards when he gets in trouble at daycare.

¶11    Griffin determined that C.C. was not safe living with Herrera, so he was placed with his paternal grandmother, R.C. However, C.C. was subsequently removed from his grandmother's home, and placed with his biological mother, S.A.-G.[1]

¶12    Jennifer Garcia, a forensic interviewer, also testified. Garcia conducted two forensic interviews of C.C., both of which were video recorded and played for the jury. In the first interview, which took place when C.C. was living

---

[1] According to Griffin, C.C. was removed from R.C.'s home for several reasons, including that R.C. had violated the agreed upon protection plan by allowing R.C.'s boyfriend and Herrera to be present around C.C. without supervision and Griffin had concerns about C.C. changing his story while placed in R.C.'s home.

with R.C., C.C. stated that he fell at school and had lied about the allegation regarding Herrera. In the second interview, which took place when C.C. was living with S.A.-G., C.C. stated that Herrera had cracked his fingers and broke his arm.

¶13 C.C. testified that he used to live with S.C. and Herrera. C.C. stated that Herrera would drop him off and pick him up from KinderCare. While C.C. was in the car coming home from daycare, Herrera cracked his fingers by bending them backwards because he was being "naughty." C.C. identified a photo depicting his swollen hand.

¶14 During a break in the testimony, the prosecutor indicated that S.C. would be the State's next witness. Once on the stand, S.C. asserted his Fifth Amendment rights. Based upon S.C.'s invocation of his Fifth Amendment rights, the prosecutor decided not to call him as a witness. Trial counsel also confirmed that he would not be calling S.C. as a witness.

¶15 Next, Officer Tim Patterson testified that he spoke with Herrera at Children's Hospital about C.C.'s hand. Herrera told him that she cracks her own knuckles and that C.C. would mimic her doing that but his would not crack. In regards to C.C.'s broken arm, Herrera stated that he broke it while going down a slide in a "Superman position."

¶16 Officer Patterson also spoke with C.C. When Officer Patterson asked C.C. what happened to his hand, C.C. said that when he has a bad day, Herrera cracks his knuckles. C.C. then showed Officer Patterson how his knuckles were cracked.

5

¶17 Dr. Lynn Sheets, the Medical Director of the Child Abuse Program at Children's Hospital, testified that C.C.'s hand injuries were "highly concerning for child physical abuse or an inflicted injury." On cross-examination, when she was asked if she attributed C.C.'s broken arm to child abuse, she testified, "no, I'm not attributing that to child abuse."

¶18 After the State rested, the defense called R.C. R.C. testified that she went camping with C.C. four days before July 3, 2018, and did not see any injuries on C.C. R.C. also brought C.C. home from Children's Hospital on July 3. R.C. testified that on the drive home, C.C. was "happy" and when they got home, he was "strutting up the driveway," and he goes "ha, ha, I tricked all of them." R.C. responded that "It's not nice to trick adults. You need to tell them the truth." R.C. did not ask any questions about his comment.

¶19 The jury found Herrera guilty of physical abuse of a child, recklessly causing great bodily harm as charged in the amended information. The circuit court imposed and stayed a sentence of three years of initial confinement and two years of extended supervision, and placed Herrera on probation for three years with twelve months of condition time at the House of Correction.

¶20 Herrera filed a postconviction motion seeking a new trial based upon newly discovered evidence. In support, the motion included an affidavit from S.C. Herrera admitted that S.C. was present at her trial; however, she argued that S.C.'s affidavit constituted newly discovered evidence because S.C. invoked his Fifth Amendment right and did not testify at trial.

¶21 In S.C.'s affidavit, he stated that, "I am the boyfriend of [Herrera] and we lived together back in July of 2018." He further stated that on June 30, 2018, through July 1, 2018, he went camping with Herrera and C.C. and did not

see any injuries on C.C.  Additionally, on the morning of July 3, 2018, he did not see any injuries while C.C. was getting ready to go to KinderCare.  Herrera then took C.C. to school.[2]  S.C. asserted that he had never witnessed Herrera "harm and [sic] of our children."

¶22    In addition, Herrera's motion included an affidavit from her mother, E.H.  In E.H.'s affidavit, she asserted that on July 2, 2018, Herrera brought C.C. to E.H.'s house and they spent the day visiting.  C.C. was "happy" and did not complain about any injuries or pain.  E.H. had never seen Herrera do anything wrong to C.C.  In her motion, Herrera did not argue that E.H.'s affidavit was newly discovered evidence, but argued that E.H.'s affidavit corroborated S.C.'s affidavit.

¶23    The circuit court denied Herrera's motion without a hearing.  The court began by noting that Herrera's witness list included both S.C. and E.H.  Thus, the court concluded that their affidavits were not newly discovered evidence because Herrera was aware prior to trial that the witnesses "might have relevant evidence."  Moreover, the court found that even if the affidavits did qualify as newly discovered evidence, "there is no reasonable probability of a different trial outcome."  The court noted that neither S.C. nor E.H. "claim to have been present at the time [C.C.] sustained his injuries:  they can only state that he was uninjured when they last saw him, and that they did not observe any previous mistreatment of [C.C.] by [Herrera]."  This appeal follows.

---

[2] S.C.'s affidavit noted that it was approximately a five-minute drive to school.

## DISCUSSION

¶24    On appeal, Herrera contends that the circuit court erred when it failed to hold a postconviction evidentiary hearing on her newly discovered evidence claim.  Herrera also contends that the circuit court erred when it granted the State's other-acts motion.  We address each of Herrera's arguments below.

### I.    Newly Discovered Evidence

¶25    When a circuit court denies a postconviction motion without an evidentiary hearing, we review *de novo* "whether the motion on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief" and "whether the record conclusively demonstrates that the defendant is not entitled to relief." *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608.  "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶26    To set aside a judgment based on newly discovered evidence, a defendant must show by clear and convincing evidence that:

> (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.

*State v. Love*, 2005 WI 116, ¶43, 284 Wis. 2d 111, 700 N.W.2d 62 (citation omitted).  If a defendant satisfies his burden on all four of these elements, the circuit court must then determine "whether a reasonable probability exists that a

different result would be reached in a trial." *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted). "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Id.*

¶27 Herrera contends that S.C.'s affidavit meets the newly discovered evidence test, and that she is entitled to an evidentiary hearing.[3] We disagree. The record conclusively demonstrates that Herrera is not entitled to relief.

¶28 To start, we are not persuaded that the evidence at issue is in fact newly discovered. Before the jury was sworn in, trial counsel specifically stated that "the defense does not intend to call [S.C.] as a witness[.]" Trial counsel explained that he was concerned that S.C. would commit perjury if he testified. Thus, S.C.'s testimony was not "discovered after conviction." *See Love*, 284 Wis. 2d 111, ¶43 (citation omitted).

¶29 Moreover, the record reflects that Herrera herself also knew of S.C.'s assertions before her conviction. According to S.C.'s affidavit, Herrera was on the camping trip with S.C. the weekend before the allegations. Herrera was also present the morning of July 3, 2018, as S.C.'s affidavit notes that Herrera drove C.C. to school that day. Accordingly, Herrera would have known of S.C.'s presence. *See Sheehan v. State*, 65 Wis. 2d 757, 768-69, 223 N.W.2d 600 (1974) (holding that there was not newly discovered evidence where the defendant knew that his co-defendant was involved in the offense and had knowledge of the facts

---

[3] Herrera does not contend that E.H.'s affidavit meets the newly discovered evidence test. Thus, we do not address it.

of the case). Nothing in Herrera's motion alleges that she did not know the facts set forth in S.C.'s affidavit until after the trial. *See Love*, 284 Wis. 2d 111, ¶43.

¶30 Further, even if we assume that the evidence is newly discovered, there is not a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to Herrera's guilt. *See Avery*, 345 Wis. 2d 407, ¶25. At trial, the jury heard C.C. testify that while he was in the car coming home from KinderCare, Herrera cracked his fingers by bending them backwards because he was being "naughty" at school. The jury also heard testimony from multiple other witnesses, including Altenburg, Officer Patterson, and Griffin, that C.C. said that Herrera cracked his fingers or bent his hand. In addition, the jury heard from Dr. Sheets, who opined that C.C.'s hand injuries were "highly concerning for child physical abuse or an inflicted injury."

¶31 Thus, given the evidence presented at trial and S.C.'s personal relationship with Herrera, there is not a reasonable probability that if S.C. had testified a jury would have a reasonable doubt as to Herrera's guilt. *See id.*, ¶25.

## II. Other-Acts Evidence

¶32 Herrera next contends that the circuit court improperly admitted evidence that in June of 2018, she broke C.C.'s arm.

¶33 When determining the admissibility of other-acts evidence, courts apply a three-pronged test. Other-acts evidence is properly admitted if: (1) it is offered for a permissible purpose under WIS. STAT. § 904.04(2) (2021-22);[4] (2) it

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

is relevant under WIS. STAT. § 904.01; and (3) its probative value is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03. *See State v. Sullivan*, 216 Wis. 2d 768, 783-89, 576 N.W.2d 30 (1998).

¶34 Even if we assume that the broken arm evidence was impermissible other-acts evidence, the error was harmless. *See State v. Thoms*, 228 Wis. 2d 868, 873, 599 N.W.2d 84 (Ct. App. 1999) ("Error in admitting other[-]acts evidence is subject to harmless error analysis."). An error is harmless if the party who benefited from the error "shows 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *State v. Monahan*, 2018 WI 80, ¶33, 383 Wis. 2d 100, 913 N.W.2d 894 (citation omitted). Whether an error is harmless presents a question of law that we review *de novo*. *State v. Echols*, 2013 WI App 58, ¶15, 348 Wis. 2d 81, 831 N.W.2d 768.

¶35 As the circuit court observed in its postconviction decision, the strength of the evidence against Herrera was "strong." *See Monahan*, 383 Wis. 2d 100, ¶35 (stating that when applying the harmless error rule, it is permissible to consider "the overall strength of the State's case"). As stated above, the jury heard testimony from C.C. that Herrera cracked his fingers by bending them backwards for punishment. Multiple witnesses also said that C.C. told them that Herrera cracked his fingers or bent his hand, and Dr. Sheets opined that C.C.'s hand injuries were "highly concerning for child physical abuse or an inflicted injury."

¶36 Moreover, at trial, the testimony that Herrera had broken C.C.'s arm was limited. Garcia testified that during C.C.'s second interview, C.C. stated that Herrera broke his arm. In contrast, there was significant testimony contradicting that evidence. *See State v. Hunt*, 2014 WI 102, ¶27, 360 Wis. 2d 576, 851 N.W.2d 434 (stating that "the presence or absence of evidence … contradicting the

erroneously admitted or excluded evidence" may aid in the application of the harmless error rule).

¶37    Castronovo testified that when she asked C.C. about his arm, C.C. said he fell off a slide at the park and Castronovo did not suspect abuse at that time.  Likewise, Officer Peterson, who spoke to Herrera, testified that she said C.C. broke his arm at Pleasant View Elementary while going down a slide in a "Superman position."  In addition, and most significantly, when Dr. Sheets was asked if she attributed C.C.'s broken arm to child abuse, Dr. Sheets testified, "no, I'm not attributing that to child abuse."  Thus, it is clear beyond a reasonable doubt that Herrera would have been convicted, absent the testimony that C.C. stated that Herrera broke his arm.  *Monahan*, 383 Wis. 2d 100, ¶33.

¶38    Therefore, for the reasons stated above, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.