COURT OF APPEALS
DECISION
DATED AND FILED

March 14, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1942-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF1724

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JUDITH KNIGHT,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Dane County: SUSAN M. CRAWFORD, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Judith Knight appeals a judgment of conviction, following a jury trial, for theft of more than $10,000. Knight argues that she is

entitled to a new trial because: (1) the evidence was insufficient to sustain the jury's verdict, and (2) the circuit court erred by admitting improper "other acts" evidence in the form of testimony describing a Facebook post and the business card depicted in the post. We conclude that the evidence presented at trial was sufficient to sustain the jury verdict and that, assuming that it was error for the court to admit the business card-related evidence over Knight's objection, the error was harmless. We affirm.

*Background*

¶2 The State charged Knight with stealing more than $10,000 from a church. At trial, the pastor of the church testified that, over a four-year period that Knight was the treasurer of a church committee that supervised charitable donations, she transferred almost $40,000 from the church to her personal bank accounts. Knight returned about $3,600 of that amount to the church before the church confronted her about the unauthorized transfers. When confronted, Knight admitted that she took the money, but told the church that she intended to pay it back. However, Knight did not make any further repayment to the church.

¶3 The pastor testified that church representatives spent a year attempting to resolve the matter with Knight through restorative justice methods. But church representatives changed course after they became aware of two Facebook posts by Knight. Central to this appeal was a Facebook post that

consisted of a photograph of Knight's business card, which reflected that she was holding herself out as a financial advisor.[1]

¶4     Defense counsel objected to testimony describing the Facebook post and to admission of the business card into evidence.  Counsel argued that evidence that Knight was starting such a business was not relevant to any of the elements of the theft charge.  The circuit court overruled those objections, admitting the business card into evidence and allowing the prosecution to continue questioning the pastor about the Facebook post, but cautioned the prosecution to be careful with its examination on this topic.

¶5     In continued questioning, the pastor testified that church members were "very concerned about [Knight's] attempt to get involved in some sort of financial service business."  Defense counsel objected again, and the court sustained the objection and ordered that testimony to be stricken.

¶6     Knight testified at trial.  She admitted that she wrote checks from the church to herself without authorization to do so.  She further testified, however, that she did not intend to keep the money, but rather she planned to pay the church back with funds from her income tax return or out of loans she had taken.  Knight testified that she liquidated a retirement account worth $30,000, but had to use those funds on other expenses.  Knight testified that, despite her intentions, she was unable to pay back the church based on other financial demands.

---

[1] The other Facebook post related to Knight gambling at a casino with her then-husband. Because Knight does not make any argument on appeal related to the casino Facebook post, we do not address it further.  When we say "the Facebook post" we mean the one with the business card.

¶7    The prosecution referenced the Facebook post in closing arguments, saying that church members were concerned that Knight "was apparently talking about handling other people's money when she had financial problems of her own."

¶8    The jury returned a guilty verdict.  Knight appeals the judgment of conviction.

*Standard of Review*

¶9    We review the sufficiency of the evidence de novo, but in the light most favorable to sustaining the conviction.  ***State v. Hanson***, 2012 WI 4, ¶15, 338 Wis. 2d 243, 808 N.W.2d 390.  Whether an error is harmless presents a question of law that we review de novo.  ***State v. Echols***, 2013 WI App 58, ¶15, 348 Wis. 2d 81, 831 N.W.2d 768.

*Discussion*

¶10    Knight contends that the evidence at trial was insufficient to support the jury's verdict because the prosecution did not prove that she intended to permanently deprive the church of the money that she admitted transferring to herself.  *See* WIS. STAT. § 943.20(1)(a) (2021-22)[2]; WIS JI—CRIMINAL 1441 (elements of theft are that the defendant:  (1) intentionally took or retained property, (2) without consent of the owner, (3) with knowledge the owner did not

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

consent, and (4) with intent to permanently deprive the owner of the property).[3] Knight's argument focuses on the fourth element. She contends that the evidence at trial failed to provide a basis for the jury to find beyond a reasonable doubt that she intended to keep the funds that she took from the church. Rather, Knight argues, the evidence supported only a finding that Knight intended to return all of the funds she took.

¶11 We review the sufficiency of the evidence to support a conviction for whether "the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *See State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). We will uphold a conviction "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt." *Id.*

¶12 Knight directs us to the following evidence, which she contends established that she intended to return the money that she took from the church: that she paid $3,600 back to the church before the church confronted her about the unauthorized payments; that she told church representatives that she intended to pay the money back; that she attempted to make other payments to the church that were returned for insufficient funds; that she entered an agreement with the church's insurance company to pay back the funds, but was unable to make the payments under the agreement; and that she liquidated a retirement account, but

---

[3] WISCONSIN STAT. § 943.20(1)(a) in pertinent part prohibits "[i]ntentionally … transfer[ring] … movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property."

then had to use that money to pay other expenses. Further, Knight cites her own testimony that she intended to pay back the funds she had taken but that she was unable to do so due to her lack of employment, as well as her stated intention to pay the church back from her income tax return.

¶13 We conclude that the evidence was sufficient to support the jury's finding that Knight intended to keep the money she took based on the evidence before it. All of the evidence favorable to Knight that she now summarizes could have supported a jury finding that Knight intended to return the funds she took. But the evidence did not compel that finding. As the sole arbiter of the credibility of the witnesses, the jury was free to reject Knight's testimony as to her intent. *See Poellinger*, 153 Wis. 2d at 504. More specifically, the jury was not required to find that Knight intended to return the funds to the church based on her statement to the church, made only after she was confronted about the unauthorized transfers, that she intended to return the money. Nor was the jury required to accept that Knight did not intend to keep the money she took based on the $3,600 that she returned to the church or her liquidation of her retirement account. Rather, it was reasonable for the jury to infer from the fact that Knight kept about $36,000 in unauthorized payments from the church—despite her admitted access to funds she could have used to repay the church—that Knight had the intent to permanently deprive the church of those funds. *See id.* at 507 (we accept any inference drawn by the jury "unless the evidence on which that inference is based is incredible as a matter of law"). When, as here, "any possibility exists" that the jury could have drawn "appropriate inferences" from the evidence presented at trial, we may not overturn the verdict. *Id.*

¶14 Turning to Knight's argument that the circuit court erroneously exercised its discretion by allowing the prosecution to present testimony

6

describing the Facebook post and the business card depicted in the post, she argues that this constituted improper "other acts" evidence. *See* WIS. STAT. § 904.04(2)(a) (generally, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," subject to specific exceptions); *State v. Sullivan*, 216 Wis. 2d 768, 772-74, 576 N.W.2d 30 (1998) (other acts evidence is admissible only if the proponent of the evidence establishes that it is offered for a proper purpose, that it is relevant, and that its probative value is not substantially outweighed by the danger of unfair prejudice).

¶15     As a preliminary matter, the parties dispute whether the Facebook post constitutes "other acts" evidence subject to the *Sullivan* analysis. We need not resolve that dispute. Rather, we conclude that, assuming that the Facebook post was impermissible other acts evidence, any error in admitting the evidence was harmless. *See State v. Thoms*, 228 Wis. 2d 868, 873, 599 N.W.2d 84 (Ct. App. 1999) ("Error in admitting other acts evidence is subject to harmless error analysis.").

¶16     An error is harmless if the party who benefited from the error "shows 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *State v. Monahan*, 2018 WI 80, ¶33, 383 Wis. 2d 100, 913 N.W.2d 894 (quoted source omitted). "The test for harmless error is whether there is a reasonable possibility that the error contributed to the conviction." *Thoms*, 228 Wis. 2d at 873. "[W]e focus on whether the error undermines our confidence in the case's outcome, and to do so, we must consider the error in the context of the entire trial and consider the strength of untainted evidence." *Id.* (citation omitted).

¶17 The State now argues that any error by the circuit court in allowing testimony describing the Facebook post and admitting into evidence the business card depicted in the post was harmless. It argues that the jury is presumed to have followed the court's instructions to disregard the pastor's testimony about the congregation's negative feelings about the Facebook post. *See State v. LaCount*, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780 ("Jurors are presumed to have followed jury instructions."). It also contends that the business card-related evidence was only a very small part of the prosecution's case, and that there was strong evidence at trial of Knight's intent to permanently deprive the church of the funds, including the following: (1) Knight returned only a small portion of the funds she took, and returned no funds after the church confronted her about the unauthorized payments; (2) the church's restorative justice efforts with Knight, and the repayment plan the church's insurance company reached with Knight, were unsuccessful; and (3) during the church's restorative justice attempts and the insurance company's repayment plan, Knight liquidated a retirement account that gave her access to $30,000, but did not use any of those funds toward paying back the church.

¶18 Knight contends that the Facebook post portrayed her as a "financial schemer" and improperly invited the jury to shift focus from the elements of the charged offense to the fear by church members that she would steal from somebody else. Knight also contends that the evidence was prejudicial because of the pastor's testimony about the church members' feelings about the Facebook post and the prosecutor's closing argument referencing the post. She argues that the testimony and closing argument sought to persuade the jury to punish her for trying to start a financial business when she was in poor financial shape herself, and gave the jury the choice to find her guilty based on the church members'

feelings rather than whether she intended to keep the funds she took from the church.[4]

¶19     Knight acknowledges that the circuit court struck the pastor's testimony purporting to summarize the feelings of church members, and she also acknowledges that juries are presumed to follow the court's limiting instruction. *See **LaCount***, 310 Wis. 2d 85, ¶23.   She argues, however, that limiting instructions "are not foolproof," *see **Dean v. Wexford Health Sources, Inc.***, 18 F.4th 214, 234 (7th Cir. 2021).   Further, she contends that the limiting instruction here was insufficient because:  (1) the court had cautioned the prosecution to be careful in its examination on this topic; (2) at the time of the testimony, the court made only a "brief comment" that the testimony was stricken and did not give a separate instruction regarding the stricken evidence until two days later, during closing instructions; and (3) the jury was aware of the importance of the pastor's testimony because it was brought to its attention when the defense objected to the Facebook post, when the court held a sidebar, and when the defense then objected to the pastor's testimony.  She argues that a limiting instruction did not cure what we are assuming was error under these circumstances.   She argues that the Facebook post, the pastor's testimony purporting to summarize the feelings of

---

[4] We note that Knight's argument may distort the nature of some evidence.  She argues that the pastor testified that the Facebook post about starting her own financial advising business made church members "extremely angry."   In fact, however, the pastor testified that church members "were extremely angry that money had not been paid back but money was being spent at the casino, and others were very concerned about the attempt to get involved in some sort of financial service business."  Thus, the testimony was that some church members were "extremely angry" about the Facebook post about money spent at a casino, and *other* church members were "very concerned" about the financial service business post.  In any event, the circuit court struck the pastor's testimony as to the congregation's feelings about both Facebook posts, and our analysis applies equally to the pastor's testimony that church members were "extremely angry" about one post or "very concerned" about the other.

church members about the post, and the prosecution's reference to the post during closing arguments contributed to the guilty verdict because this case was otherwise "a very close call."

¶20 We conclude that it is clear beyond a reasonable doubt that a rational jury would have found Knight guilty absent the assumed error in allowing testimony describing the Facebook post and admitting into evidence the business card depicted in the post that indicated that she was holding herself out as a financial advisor. First, we are not persuaded by Knight's attempts to minimize the effect here of the general rule that juries are presumed to follow a circuit court's instructions, including an instruction to disregard stricken testimony. Knight has not shown that the limiting instruction was insufficient in this case.

¶21 Second, considering the pastor's testimony along with the business card-related evidence and the prosecution's brief reference to it in closing arguments, we conclude that there is no reasonable possibility that it contributed to the outcome. There is nothing illegal or untoward in itself about a person trying to start a financial advising business, and the prosecution did not explicitly argue that her efforts in this regard were wrongful. More specifically, the prosecution's brief reference to this evidence in its closing arguments was that church members were concerned that Knight "was apparently talking about handling other people's money when she had financial problems of her own," which is a comment on the raw feelings of church members about Knight and her credibility. Considered in a fair manner by the jury, this argument and the evidence about her purported financial advising business essentially conveyed only that Knight was attempting to start such a business, and we see no reason that it would have led the jury to disregard the relevant evidence regarding her intent and instead punish Knight for attempting to start a financial advising business. If anything, this could have

10

bolstered her defense that she had her own financial difficulties which she was trying to work out of through legitimate means (putting aside the fact that some church members were mad at her and did not trust her). Similarly, we see no reason to think that the pastor's testimony—to the same effect, about mistrust of Knight—would have caused the jury to base its verdict on the purported feelings of church members about her holding herself out as a financial advisor rather than the relevant evidence bearing on her intent.

¶22 In light of the trial evidence as a whole, and the instructions given by the circuit court, we conclude that there is no reasonable possibility that the business card-related evidence and brief testimony and comment on it contributed to the verdict of guilty. Accordingly, any error was harmless.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.